Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>Plaintiff,<br><br>vs.<br><br>BW RRI II, LLC. DBA RED ROOF PLUS+ SAN FRANCISCO AIRPORT<br><br>Defendant. | Case No: 3:20-cv-03142-AGT<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS [5] [6]** |

## INTRODUCTION

Segregation of the disabled from the mainstream is the last vestige of collectively acceptable discrimination. While Congress attempted to provide individuals with disabilities with the same level of protection as "individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age", 42 U.S.C. §12101 (a)(4), this lofty congressional goal has been ignored by most, including this Defendant who, without a doubt, is one of the most notorious ADA violators.

ADA violators' failure to accommodate the disabled has been largely accepted in today's America. During the 30 year life of the ADA, offenders have infused themselves into every capillary of the social body in order to portray the disabled as inconsequential throwaway family of individuals not worthy of equal access. They whispered and sniveled their segregationist views into the ears of the media and the general polity, attorneys general and state legislators, news editors and lawyer associations. They have been amazingly successful.

To prove their unyielding devotion to segregationism, ableists do not hesitate to lie, slander and disparage. Segregationist animus allows for the lies and the slander and the disparagement because a segregationist is, by definition, a small minded individual with limited view of greater society and even narrower perception of his own folly. For segregationists, hatred is a form of unprincipled principle.

But the measure of equal protection "for which our free society is justifiably famous", 42. U.S.C. §12101(a)(8) does not permit consideration of the prevailing public bias. As in the case of 1963 Alabama when George Wallace infamously declared "segregation now, segregation tomorrow, segregation forever"[1] which became a rallying cry for those opposed to integration and the Civil Rights Movement, so does today's public sentiment view segregationist public accommodation with conscious indifference. With respect to the ADA, setting aside silent biases is a hard way of achieving integration, but it is the only way that works.

A dangerous pattern in the evolution of civil rights has evolved. Some advocates use federal motion practice as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) might apply. There, Judge Harmon displayed the courage to state what most ADA civil rights plaintiff's know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile**. *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

---

[1] 1963 inaugural address.

It is not surprising, then, that some defendants relentlessly bid to awaken potential skepticism in district courts. By pursuing arousal of cynicism, defendants artfully create an intolerable level of distrust between ADA plaintiffs and the courts. The creation of uncertainty and distrust is some defendants' end game. It is the end game of *this* segregationist Defendant.

Unfortunately for Defendant, its game does not play well in the Northern District. *See* Exhibits 1-4, Northern District Decisions denying similar motions to dismiss filed against Plaintiff in other cases.

The judiciary is the last and the only branch of the government still universally trusted. Defendant's attempts to sow distrust is, on the case level, designed to benefit Defendant and prejudice Plaintiff. On the grander scale it seeks to diminish judiciary's well-earned trust and respect to that of the ever diminishing reputations of the executive and legislative branches.

This must never happen.

## MEMORANDUM

Defendant brings two issues to bear: First, that Plaintiff's complaint fails to allege "standing" to sue, and Second, that the Court should decline supplemental jurisdiction[2]. Defendant's Motion confuses the sufficiency of allegations in a facial attack versus the sufficiency of proof in a factual attack on jurisdiction. The following discussion correct this misunderstanding.

The United States Supreme Court and the 9th Circuit Court of Appeals have clearly defined the quantum of jurisdictional allegations required at the pleadings stage. Unfortunately, some defendants confound the *Ashcroft* and *Twombly* with *Lujan, Seldin*, *Centex, Kayo*, *CREEC* and Fed. R. Civ. P. 9(b) as more fully developed below.

---

[2] The request to deny supplemental jurisdiction is odd indeed. If the Court declines supplemental jurisdiction, Plaintiff will file the state law claims in the State Court. If that happens, the Defendant will have to defend in two different forums and pay twice as much in lawyers fees as otherwise. Good for lawyers, very bad for clients.

3

# ANALYSIS

A. LEGAL STANDARDS

## I. Distinction Between Facial and Factual Challenges to Jurisdiction

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant makes a facial attack on jurisdiction, factual allegations of the complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Fed'n of African Am. Contractors*, 96 F.3d at 1207.

In contrast, a factual attack on subject matter jurisdiction occurs when, as here, a defendant challenges the actual lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff must support … jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). The district court may resolve those factual disputes itself, unless "the existence of jurisdiction turns on disputed factual issues[.]" *Id.* at 1121-22 (citations omitted). "To the extent that the jurisdictional facts are disputed . . ., the parties should be allowed to conduct discovery for the limited purpose of establishing jurisdictional facts before the claims can be dismissed." *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 713 (9th Cir. 1992)

Where a defendant brings a factual challenge, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute jurisdictional allegations in the complaint, the party opposing the

motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989)).

In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S. Ct. 1003 (1998), the Supreme Court emphasized that a federal court must first establish as "an antecedent" matter that it has jurisdiction.

**II. Elements of Proof under Rule 12(b)(1) and 12(b)(6) are Different.**

The standing inquiry requires a plaintiff to show (1) he suffered an "injury in fact; (2) there is a causal connection between that injury and the defendant's conduct; and (3) a favorable decision would likely redress the injury. *Civil Rights Educ. & Enforce. Ctr. v. Hosp. Properties Trust* ("CREEC"), 867 F.3d 1093, 1098 (9th Cir. 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). When a plaintiff seeks injunctive relief, he must also "allege 'continuing, present adverse effects' stemming from the defendant's actions." *Id.* (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). Federal courts must "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the act." *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1039-40 (9th Cir. 2008) ((quoting *Trafficante v. Metro Life Ins. Co.,* 409 U.S. 205, 209 (1972)).

On the other hand, to state an ADA claim, a plaintiff must allege that (1) he is an individual with a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007); *Arizona ex rel. Goddard v. Harkins Amusement Enter. Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

///

### III.    Pleading Standards under Rule 12(b)(1) and 12(b)(6) are also Different[3].

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*Ashcroft*) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*Twombly*) apply to 12(b)(6) motions. *Twombly* and *Iqbal* addressed the pleading required to survive a motion to dismiss for failure to state a claim, and, distilled to their essence, impose two requirements. First, the reviewing court, though crediting factual assertions made in the pleadings, is not required to credit legal conclusions. *Ashcroft,* 129 S.Ct. at 1949-50 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Second, the complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief. *Id.* at 1950-51.

However, *Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008); *see also Seldin,* 422 U.S. at 500, 95 S.Ct. 2197 (Standing "in no way depends on the merits of the contention that particular conduct is illegal.") (*Seldin)*; *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Catholic League for Religious and Civil Rights v. City & Cnty. of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from

---

[3] Plaintiff confesses that he first recognized the depth of this perplexity from the extraordinary analysis by the Honorable John A. Mendez. In *Johnson v. Alhambra & O Associates,* (2019 E.D. Cal. 2:19-cv-00103 at Dkt. 15), Judge Mendez denied a motion to dismiss under Rule 12(b)(1) by noting, in part:

> [A] plaintiff's statement of subject-matter jurisdiction is not governed by the strict pleading standard of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007). *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011).

The entire decision is appended hereto as Exhibit 5.

6

being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.").

The proper 12(b)(1) analysis is subject to a different standard. *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).) "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Seldin,* 422 U.S. at 501, 95 S.Ct. 2197. "**At the pleading stage… we `presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'**" *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. 2130 (emphasis supplied) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); *see also Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (cautioning that while at the summary judgment stage, the court "require[s] specific facts to be adduced by sworn testimony," a "challenge to a generalized allegation of injury in fact made at the pleading state ... would have been unsuccessful"). *See also Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (*Wilson*) (per curiam) (noting that the minimal allegations that a plaintiff intends to return is sufficient to defeat a motion to dismiss).

**IV.  Fed. R. Civ. P. 9(b) is Consistent with *Seldin, Mayo* and *Wilson*.**

Fed. R. Civ. P. 9(b) is consistent with *Seldin, Mayo* and *Wilson*. It provides that "intent (*to return*) … and other conditions of a person's mind (*being deterred*) may be alleged generally". Fed. R. Civ. P. 9(b).

Federal Rules of Civil Procedure were drawn under the authority of the act of June 19, 1934, U.S.C., Title 28, §723b [see 2072] (Rules in actions at law; Supreme Court authorized to make), and §723c [see 2072] (Union of equity and action at law rules; power of Supreme Court) and also other grants of rule-making power to the Court. See Clark and Moore, *A New Federal Civil Procedure—I. The Background*, 44 Yale L.J. 387, 391 (1935). *Notes of Advisory Committee on Rules—1937 at ¶3.*

### V. The *CREEC* Pleading Standard is Also Consistent with *Seldin, Mayo, Wilson* and Fed. R. Civ. P. 9(b)

The Court in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) addressed the very jurisdictional issue facing the court here: The Court in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) addressed the very jurisdictional issue facing the court here. The Court confirmed that ADA plaintiffs may demonstrate a likelihood of future harm in one of two ways. They may either show (1) injury in fact coupled with an intent to return to the offending facility; or (2) deterrence from visiting or returning to the facility because of the ADA violation(s). *Id.* at 1098-99.

> A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.
>
> ***
>
> **The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured.** Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs, " as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. **Their**

8

> **harm is "concrete and particularized, " and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical."** (*Emphasis supplied*)

*CREEC* 867 F.3d at 1100-01.

So here, Plaintiff alleges that he is disabled, Complaint [1] at ¶2, 4, that Defendant is a public accommodation, ¶5, that Plaintiff personally experienced violations of the ADA barriers to accessibility, ¶19 and Addendum A, which barriers to accessibility relate to Plaintiff's disabilities, ¶20, that the removal of barriers is readily achievable, ¶21. The standing allegations are further enhanced in ¶¶10-12:

> 10. The ADAAG AND Unruh violations in this Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.
>
> 11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.
>
> 12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

Under the standards addressed above, the Complaint is jurisdictionally flawless.

**V. The Court should Retain Supplemental Jurisdiction over State Law Claims.**

The issue of supplemental jurisdiction has also been addressed, and decided, in the Northern District. *See* the extraordinary analysis of the issue by the Chief Magistrate Judge Joseph C. Spero in *Castillo-Antonia v. Hernandez* (N.D. Cal. 3:19-cv-00672-JCS at Dkt. 20) appended hereto as Exhibit 6. The *Castillo-Hernandez* analysis if incorporated herein without further argument.

9

**CONCLUSION AND PRAYER FOR RELIEF**

Defendant's Motion is not well taken and should be denied in its entirety. Alternatively, should the Court conclude that Plaintiff inadvertently omitted to allege a specific legal phrase of art or specific jurisdictionally acceptable word, Plaintiff respectfully requests leave to amend.

RESPECTFULLY SUBMITTED this 27th day of July 2020.

**PETER STROJNIK**

Plaintiff

ECF filed July 27, 2020.