Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No: 3:20-cv-03142-AGT

**AMENDED COMPLAINT**

PETER STROJNIK,

Plaintiff,

vs.

BW RRI II, LLC. DBA RED ROOF
PLUS+ SAN FRANCISCO AIRPORT;
RED ROOFS INNS, INC.

Defendant.

1.  **Americans with Disabilities Act**
2.  **California Unruh Civil Rights Act**
3.  **California Disabled Persons Act**
4.  **Intentional Fraud and Deceit Cal Civ. Code §1710(3)**
5.  **Fraud and Omissions, Cal Civ. Code §1710(3)**
6.  **Negligent Misrepresentation**
7.  **False Advertising Violation Cal. Civ. Code §§ 17500 *et seq***
8.  **Unfair Competition, cal. Bus. & Prof. Code §§17200 and**
9.  **Negligence**
10. **Civil Conspiracy**
11. **Civil Aiding and Betting**

**JURY TRIAL REQUESTED**

## NATURE OF THE CASE

1. It has been 30 years since the passage of the Americans with Disabilities Act, but the discrimination against the disabled persists. During this thirty year period, ADA offenders have portrayed themselves as victims to all segments of society, from the

media to the general polity, from attorneys general to state legislators, from news editors to lawyer associations. They have been amazingly successful.

2. Segregation of the disabled has become a collectively acceptable form discrimination. Discrimination is particularly acute in the lodging industry.

3. Despite the thriving, collectively acceptable discrimination against the disabled in the lodging industry, however, Plaintiff is entitled to full and equal enjoyment of lodging services and facilities, 42 U.S.C. §12182(a). His right to equal and full participation in the benefits and services in lodging facilities is inviolate.

4. The lodging industry is subject to specific accessibility disclosure requirements under 28 C.F.R. 36.302(e)(1)(ii), and specific architectural accessibility requirements pursuant to the ADA Accessibility Guidelines ("ADAAG").

5. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the use of purchased brand names such as "Holiday Inn" and "DoubleTree by Hilton"  while at the same time concealing the true identity of the hotel owners and operators. The intent and purpose of this deceptive identification is to mislead the lodging public into believing that they are booking a hotel  room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator.

6. The misidentification of the true "operator" or "owner" of a place of lodging with a purchased and paid for nationwide lodging brand has become a norm in the lodging industry.

7. Some hotels, motels and other places of lodging have developed a system of booking website accessibility disclosures that disclose certain accessible features but also describe other features that are not accessible. The effect of admissions of non-accessibility is to deter the disabled from lodging there.

8. Where a place of lodging limits a disabled person's access to particular features, such limitation represents a prohibited eligibility criteria pursuant to 28 C.F.R. 36.301 because, "while not creating a direct bar to individuals with disabilities, indirectly prevent or limit their ability to participate".

9.  Therefore, Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act; (2) California Unruh Civil Rights Act; (3) California Disabled Persons Act; (4) Intentional Fraud and Deceit Cal Civ. Code §1710(3); (5) Fraud and Omissions, Cal Civ. Code §1710(3); (6) Negligent Misrepresentation; (7) False Advertising Violation Cal. Civ. Code §§ 17500 *et seq.* (8) Unfair Competition, cal. Bus. & Prof. Code §§17200,  (9) Negligence  (10) Civil Conspiracy and (11) Aiding and Abetting.

**PARTIES**

10. Plaintiff Peter Strojnik is a 68 year old retired veteran and a disabled person as defined by the ADA, Unruh and DPA.

11. Defendant BW RRI II, LLC ("BW") owns, operates leases or leases to a lodging business ("Hotel") located at 777 Airport Blvd., Burlingame, CA 94010 which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) and Unruh.

12. Defendant Red Roofs Inns, Inc. ("Red Roof") is the owner of the brand Red Roof Plus+ brand and the assignee of the brand name "Red Roof Plus+ to BW.

**JURISDICTION AND VENUE**

13. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

14. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

15. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages.

16. Venue is proper pursuant to 28 U.S.C. § 1391.

17. The ADA violations documented below relate constitute barriers to Plaintiff equal enjoyment of defendant's Hotel by virtue of the limitations of major life activities described in Table 1 below, that is, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows, and working in a manner understood by the application of common sense, e.g., in improperly

configured handrail relates to Plaintiff's walking and grasping while an improperly configured staircase relates to his walking and climbing impairments[1].

18. These barriers impair Plaintiff's full and equal access to the Hotel.

19. Plaintiff is deterred from visiting the Hotel  based on Plaintiff's knowledge that the Hotel is not ADA compliant as such compliance relates to Plaintiff's disability. However, Plaintiff intends to return to the Hotels periodically to test them for ADA compliance. Plaintiff's current intent is to return to the Hotels to lodge there or to test their accessibility within a year's time.

20. Plaintiff intends to visit the Hotels at a specific time when they become fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant Hotel suffers an imminent injury from the Hotel's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

21. Plaintiff's intent to return is evidenced by the following factors:

A.  Plaintiff is 68 years old and has a comfortable car that can easily travel from Phoenix to San Francisco and on to Napa; and

B.  Plaintiff has been traveling to San Francisco either as a final journey or an interim destination on the way to Napa regularly since 1980, both in business and for pleasure; and

C.  During the past several years, Plaintiff has averaged two yearly trips to Napa / San Francisco± and has lodged there; and

D.  Plaintiff regularly travels to Napa to stock up on wines and spirits; and

E.  Plaintiff has a specific motive and intent to return to the location of the Hotel for three specific purposes:  First, to lodge there and, Second, while lodging there, conduct further review of the Hotel and, Third, to retest the hotel for ADA compliance; and

---

[1] These are merely examples of the application of common sense; the referenced violations were not necessarily encountered at Defendant's Hotel. The actual barriers are photographically documented elsewhere in this Complaint. Each photograph has a description of the violation in common everyday language which relates to one or more of the limited life activities described above.

F.  Plaintiff will stay at BW when he is assured that it is ADA compliant.

22. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel

23. The ADAAG and Unruh violations in this Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

24. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

25. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

**PLAINTIFF'S DISABILITIES AS DEFINED BY THE 2008 ADA AMENDMENT ACT AND 28 C.F.R. 36.105**

26. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

27. Plaintiff's physical infirmities alleged above do both of the following:

A.  Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems; and

B.  Limit, without regard to mitigated or unmitigated measures, active or inactive state, remissive or non-remissive condition, the following major life activities:

5

walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities.

28. Plaintiff has a history of impairments stated in the preceding paragraph.

29. Plaintiff is regarded as having a physical conditions that limit major life activities.

30. Because of Plaintiff's disabilities, he requires the use of lodging facilities that are accessible to him and have the standard accessibility features of the construction related accessibility standards including those required by 42 U.S.C. Sec. 12101 et seq., 28 C.F.R. Part 36, the relevant Standards for Accessibility Design, as such laws and regulations relate to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, carrying stuff and working.



31. Plaintiff has been declared disabled and has been issued a government disability placard reproduced in the margin.

32. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | x | x | x | Abnormal cell growth, genitourinary, bladder, reproductive functions. | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |

| | | | | | |
|---|---|---|---|---|---|
| Renal Cancer | x | x | x | Abnormal cell growth, midsection twisting, turning, general movement. | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, climbing, carrying stuff and other major life activities | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)(iii)(D) (e)(1)(2) (f)(1) |
| Partially Missing Limb - Missing Right Knee | x | x | x | Walking, standing, sitting, bending, walking, sleeping, working, climbing stairs, kicking, jumping, running, twisting knee, carrying stuff, and other major life activities. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, carrying stuff and working. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (e)(1)(2) (f)(1) |
| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working, carrying stuff, or physically functioning on any level. | (c)(1)(i) (d)(1)(iv) (d))1)(v) (d))1)(vi) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| **Table 1** | | | | | |

33. Plaintiff has been declared permanently disabled by the Arizona Department of Transportation and is, therefore "regarded as" being disabled. The disabled placard reproduced in the margin above entitles him to preferential parking, stopping and the use of passenger loading / drop of zone areas.

34. In their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair as defined in 28 C.F.R. 36.104.

35. Plaintiff incorporates the entirety of 28 C.F.R. 36 and the Standards for Accesibility Design into this Complaint as if fully stated herein.

**PLAINTIFF'S ADA REQUIREMENTS FOR FULL AND EQUAL ENJOYMENT OF A HOTEL**

36. With respect to the disclosures required by 28 C.F.R. 36.302(e)(1)(ii) and with respect to the removal of actual, physical or architectural barriers to accessibility, Plaintiff alleges:

   A. Plaintiff is ADA disabled as described above. The relationship between Plaintiff's impairments and major life activities is described in Table 1.

   B. Plaintiff's impairments are substantially limiting as this term is defined in the 2008 ADA Amendment Act and interpreted in 28 C.F.R. 36.105.

   C. Plaintiff alleges that the provisions of the 2008 ADA Amendment Act and 28 C.F.R. 35.105 relating to (1) ameliorive effects of mitigating measures (2) episodic impairments, (3) remissive impairments, (4) predictable assessments and (5) the interpretative definition of "substantially limiting" apply to Plaintiff.

   D. Because of and based on Plaintiff's impairments described above, Plaintiff requires a place of lodging where he desires to book a room to both:

      (i) Identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff assess independently whether Defendant's Hotel and guest rooms meet Plaintiff's accessibility needs; and

      (ii) Remediate architectural accessibility barriers that relate to Plaintiff's impairments.

E.  The identification of accessible features at the hotel through a hotel's reservation service is required because without such information, Plaintiff is unable to assess independently whether a hotel's condition meets Plaintiff's needs.

F.  The remediation of architectural accessibility barriers as they relate to Plaintiff's impairments is required because any encounter with architecturally inaccessible elements causes Plaintiff discomfort and pain when using, negotiating, overcoming or otherwise encountering such barriers.

G.  As a result, Plaintiff requires a hotel's booking services to disclose, and the hotel to remediate, all of the following accessibility requirements of the applicable Standards for Accessibility Design[2]:

(i)  Operable parts [205[3], 309, 404,] such as doors, door opening and closing hardware, AC controls. An encounter with a non-compliant operable part causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ii)  Knee and toe clearances [306] at counters, bars etc. An encounter with a non-compliant knee and toe clearance causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(iii)  Reach ranges [308] in sales stores and other elements. An encounter with a non-compliant reach range causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(iv)  Accessible routes [402]. An encounter with a non-compliant accessible route causes Plaintiff to experience pain and discomfort when using,

---

[2]  These requirements are based on Plaintiff's disability as defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105 in their active, inactive, remissive, non-remissive, mitigated or unmitigated states.

[3]  Bracketed numbers refer to Standards for Accessibility Design.

negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(v) Walking surfaces [403] on accessible routes. An encounter with a non-compliant walking surfaces causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(vi)    Parking spaces, passenger loading ones, stairways and handrails [501, 502, 503, 504, 505]. An encounter with a non-compliant parking facilities, stairways and handrails causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(vii)    Toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms [602, 603, 604, 606, 607, 608, 609, 610, 611 and 612]. An encounter with a non-compliant toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(viii)   Transient lodging guest rooms [806]. An encounter with a non-compliant transient lodging guest room causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ix)    Dining surfaces and work surfaces, benches, check out isles and sales and service counters [902, 903, 904]. An encounter with a non-compliant dining surfaces and work surfaces, benches, check out isles and sales and service counters cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

10

(x) Swimming pools and saunas [1009]. An encounter with non-compliant swimming pools or saunas causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

37. Plaintiff reviewed Defendant's booking website to determine whether it "identif[ies] and describe[s] accessible features and guest rooms offered through its reservations service in sufficient detail to assess independently whether [Defendant's Hotel or guest room] meet [Plaintiff's] accessibility needs".

38. The reproduction of relevant booking websites in Table 2 below demonstrates a failure to identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff to assess independently whether Defendant's Hotel or guest room meet Plaintiff's accessibility needs:

---

**28 C.F.R. 36.302(e)(10)(ii) NON-COMPLIANCE**
**https://www.redroof.com/property/ca/burlingame/RRI228**

**Convenience**
- 100% Smoke-Free
- ADA Accessible Parking
- ADA Accessible Rooms
- Coin Laundry
- Communication Assistance Available: TTY & Bed Shaker
- Exterior Corridors
- Mobility Accessible
- Portable Crib/Play Yard Available
- Public Transportation Nearby
- Restaurant within 1 Mile
- Sleep, Park & Fly
- Snack Center

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

---

> **The manner in which the barriers denied Declarant full and equal use or access, and which deter Declarant from visiting the Hotel:** Barrier denied Declarant full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.
>
> **Table 2**

39. The information disclosed on Hotel's Booking Website include the following misrepresentations of fact:

   A. That the Hotel has accessible self-parking. This representation is false as evidenced in Table 3 below.

   B. That the Hotel is mobility accessible. This representation is false as evidenced in Table 3 below.

40. Plaintiff personally visited the Hotel and personally encountered the following photographically documented conditions at the Hotel. Below each photograph is a vernacular description of the barrier and how the barrier affected Plaintiff's impairments described above so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).

| PERSONAL BARRIER ECOUNTERS |
| --- |

The Personal Encounters photographically described below, and the description how this violation deters strojnik from returning to the Hotel, are based on the following statutory and regulatory definitions:

**Relevant ADA disabilities**:

- prostate cancer[4] and genitourinary impairment[5];
- renal cancer[6];
- severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy[7];
- degenerative right knee (missing part of limb replaced with prosthesis)[8].

---

[4] Cancer is a disability impairment. 28 CFR 36.105(b)(2)
[5] 28 CFR 36.105(b)(1)(i)
[6] *Id.*
[7] Constitutes ADA disability. *Barlow v. Walgreen* (M.D. Fla. 8:11-cv-71-T-30EA, 2012)
[8] 28 CFR 36.105(d)(2)(iii)(D)

- Impairment of upper extremities diagnosed as possible carpal tunnel syndrome and degenerative disease of the cervical spine and shoulders.
- Pleurisy.

**Disability** means, with respect to an individual"
(i)    A physical impairment that substantially limits one or more of the major life activities[9], or
(ii)    a record of such an impairment[10]; or
(iii)    Being regarded as having such an impairment[11].

**An impairment is a disability** within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population[12].

**Physical Impairments** include any *physiological condition* or *anatomical loss* affecting one or more body systems, such as: *Neurological, musculoskeletal,* digestive, genitourinary. *Orthopedic* and *cancer* conditions are specifically defined as Physical Impairments[13].

**To be Substantially Limiting**, an impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity. The term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for substantially limits applied prior to the ADA Amendments Act[14].

**Episodic or Remissive** impairment is a disability if it would substantially limit a major life activity when active[15].

**Ameliorative Effects of Mitigating Measures** - such as medication, equipment, prosthetics - cannot be considered in determining whether an impairment substantially limits a major life activity; the effect of impairment must be considered in its unmitigated state[16].

**Predictable Assessments** require a finding of disability in any of the following circumstances:
- Partially missing limbs[17];

---

[9] 28 CFR 36.105(a)(1)(i)
[10] 28 CFR 36.105(a)(1)(ii)
[11] 28 CFR 36.105(a)(1)(iii)
[12] 28 CFR 36.105(d)(v)
[13] 28 CFR 36.105(b)(1)(i)
[14] 28 CFR 36.105(d)(1)(v)
[15] 28 CFR 36.105(d)((1)(iv)
[16] 28 CFR 36.105(d)(1)(viii)
[17] 28 CFR 36.105(d)(2)(iii)(D)

- Cancer[18]
- Major depressive disorder, bipolar disorder, post-traumatic stress disorder[19].

**Major Life Activity** includes:

(i)  [P]erforming manual tasks, … sleeping, walking, standing, sitting, reaching, lifting, bending, …concentrating, thinking, writing, communicating, interacting with others, working[20]; and

(ii)  The operation of a *major bodily function,* such as …normal cell growth, and digestive, genitourinary, …bladder, neurological, musculoskeletal, and reproductive systems. The operation of a major bodily function includes the operation of an individual organ within a body system[21].

**CONCLUSION:** Declarant's impairments constituting disability under the ADAAA and 28 C.F.R. 36.105 must be considered (1) in their unmitigated state and, if episodic, (2) as if they were active. Further, Declarant claims under all 3 prongs, including the "regarded as" prong of disability.

///

///

///

///

///

///

///

///

---

[18] 28 CFR 36.105(b)(ii)(2) and 28 CFR 36.105(d)(2)(iii)(F)
[19] 28 CFR 36.105(d)(2)(iii)(K)
[20] 28 CFR 36.105(c)(1)(i)
[21] 28 CFR 36.105(c)(1)(ii)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Description of Barrier:** No marked passenger loading zone.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint  the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide an exclusive, marked passenger loading zone.  Therefore, upon return to the Hotel, Plaintiff would run the risk of having the passenger loading zone occupied by a non-disabled individual with the result that Strojnik would have to (1) walk further to the vehicle and (2) carry his luggage at a greater distance.  This, in turn, would cause him pain, suffering and discomfort which is prohibited by the ADA.



**Description of Barrier:** "Accessible" parking not closest to entry.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint  the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide an exclusive, marked accessible parking closest to the lobby.  Therefore, upon return to the Hotel, Plaintiff would have to walk further from accessible parking than other non-disanled persons with the result that Strojnik would have to (1) walk further to the vehicle and (2) carry his luggage at a greater distance.  This, in turn, would cause him pain, suffering and discomfort which is prohibited by the ADA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Description of Barrier:** "Accessible" parking slope is too steep (over 1:48).

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint  the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide a level accessible parking space.  Therefore, upon return to the Hotel, Plaintiff would have to struggle whle entering or exiting the vehicle, grabbing onto the door frame and pulling himsel out of the vehicle while at all times holdin on to the frame with the attendant danger of falling along the slope line as evidenced by a parallellogram of forces.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Description of Barrier:** Improperly configured handrail is neither oval nor curcular.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint  the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide handrails that are usable by Plaintiff based on his impairments.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Description of Barrier:** Laundry controls are out of reach range.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint, and irrespective of amelirative effect of mitigaing damages as demanded by the 2008 ADAAA and 28 C.F.R. 36.105,  Plaintiff cannot reach the laundry controls because they are out of reach range.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23   **Description of Barrier:** Soap vending is out of reach range.

24   **How this violation deters Plaintiff from returning to the Hotel:** Based on his
25   impairments and the effect thereof on major life activities described in the body of this
     Complaint, and irrespective of amelirative effect of mitigaing damages as demanded by
26   the 2008 ADAAA and 28 C.F.R. 36.105,  Plaintiff cannot reach the soap vending
     controls because they are out of reach range.
27

28



**Identification of Specific Barrier in Plain Language:** Inaccessible check-in in counter.

**How this violation deters Strojnik from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of Complaint, the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, it does not provide accessible check in desk. Plaintiff is deterred from visiting the hotel because of his potential use of wheelchair as defined in 28 C.F.R. 36.104 prevent him from accessing the check in counter.

**Table 3.**

**BW's and RED ROOF'S BRAND DECEIT**

41. Defendant BW holds itself out as Red Roof Plus+.

42. Red Roof Plus+ is a relatively reputable nationwide hotel brand owned by Red Roof Inns, Inc.

43. BW is a Delaware entity unknown in the travel industry.  Its physical address is in Houston, its mailing address is in Ohio.

44. Upon information and belief, BW purchased the rights to the Red Roof Plus+ brand in order to mislead the public into believing that it is owned, operated and managed by Red Roof Inns, a national chain, and that it is not a flight by night operation with addresses in 3 states.

45. Plaintiff was misled by BW's misrepresentation of ownership and control in three distinct manners:

- First, by the booking websites that identify BW as Red Roof Plus+:

   **https://www.redroof.com/book/search-result#list-view**

   and

   **https://www.redroof.com/property/ca/burlingame/RRI228**

- Second, by the signage on the property:



- Third, by representation on the hotel's personnel business cards:



46. BW is not Red Roof Plus+.  It is BW.

47. Plaintiff reasonably relied on BW's false representation of its ownership, management, control and origin by Red Roof Inns, Inc. through the use of its brand, Red Roof Plus+.

48. Plaintiff has been damaged by his reliance.  He visited the Hotel, incurred costs and expenses in traveling to the Hotel, all to his damage.

49. Red Roof Inns., Inc. were aware of and consented to BW's use of its brand, and received, upon information, valuable consideration in return.

50. Red Roof Inns, Inc. agreed, coordinated, aided and abetted BW in its misrepresentation of ownership, control and origin.

**COUNT ONE**
**Violation of Plaintiff's Civil Rights under the ADA**
**Against BW Only**

51. Plaintiff realleges all allegations heretofore set forth.

52. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

53. Plaintiff visited Burlingame in the November 23-24, 2019 time frame.

54. Plaintiff consulted booking websites to determine which of the many places of lodgings identify and describe mobility accessible features in the hotels and guest

rooms in enough detail to reasonably permit Plaintiff to assess independently whether a given hotel or guest room meets his accessibility needs.

55. Plaintiff selected Defendant's competitor and lodged there.

56. While lodging at Defendant's competitor, Plaintiff encountered numerous accessibility barriers. Therefore, Plaintiff visited Defendant's Hotel to determine whether *its* accessibility features would be adequate for Plaintiff's future intended travel and lodging in the area.

57. At Defendant's hotel, however, Plaintiff also encountered barriers to accessibility These barriers are documented in Addendum A which is by this reference incorporated herein.

58. The ADA and Unruh violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full, equal and complete enjoyment of the Hotel.

59. The removal of accessibility barriers listed above is readily achievable.

60. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

A. Relief described in 42 U.S.C. §2000a – 3; and

B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

E. Equitable nominal damages; and

F. For costs, expenses and attorney's fees; and

G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**
**Against BW Only**

61. Plaintiff realleges all allegations heretofore set forth.

62. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

63. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

64. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

65. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

66. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

B. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

C.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

D.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

E.  For damages in an amount no less than $4,000.00 per encounter with barrier; and

F.  For treble damages pursuant to Cal Civ. Code. §3345.

G.  The provision of whatever other relief the Court deems just, equitable and appropriate.

### COUNT THREE
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3) Against BW Only**

67. Plaintiff realleges all allegations heretofore set forth.

68. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

69. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

70. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

71. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

72. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.  Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

B.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the

requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

C. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

D. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

E. For damages in an amount no less than $1,000.00 per violation per encounter; and

F. For treble damages pursuant to Cal Civ. Code. §3345.

G. The provision of whatever other relief the Court deems just, equitable and appropriate.

<u>**COUNT IV**</u>
**Intentional Fraud and Deceit**
**Including Brand Deceit**
**(Cal. Civ. Code §§ 1709-1711)**
**Against BW  and Red Roof**

73. Plaintiff realleges all allegations heretofore set forth.

74. Defendant made material representations to Plaintiff that it was accessibility compliant but it was not as alleged and documented above.

75. Defendant has willfully deceived Plaintiff with the intent to induce Plaintiff to alter his positions to their injury or risk, and are liable for the damages suffered by Plaintiff.

76. Defendant made the representations knowing that the representations were in fact not true.

77. Alternatively, Defendant made the representations with no reasonable grounds for believing them to be true.

78. Plaintiff altered their position in reliance on Defendant's representations.

79. "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711.

80. Defendant is responsible for their material misrepresentations described above even if they did not intend any particular class member to rely on the misrepresentations because Defendant made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiff who is a consumer who was actually misled into booking  room at Defendant's Hotel.

81. Plaintiff, by lodging at the Hotel and otherwise,  justifiably relied on Defendant's false and misleading representations.

82. As a direct and proximate result of Defendant's intentional misrepresentations and deceptive acts, Plaintiff was induced to pay more for lodging than advertised.

83. Alternatively, Plaintiff alleges that the lodging at the Hotel is priced at a super-premium in comparison to other places of lodging and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint.

84. Defendant's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff's rights and interests. Defendant's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

### COUNT V
### Fraud By Omissions / Suppression of Facts
### Including Brand Deceit
### (Cal. Civ. Code § 1710(3))
### Against BW  and Red Roof

85. Plaintiff realleges all allegations heretofore set forth.

86. Defendant failed to disclose material facts about the accessibility of the Hotel to the disabled individuals, including the fact that hotel is not mobility accessible all as more fully stated in Addendum A.

87. Plaintiff was unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

88. Defendant has willfully deceived Plaintiff with the intent to induce Plaintiff to alter his positions to their injury or risk, and is liable for the damages suffered by Plaintiff.

89. Alternatively, Plaintiff alleges that the lodging at the Hotel is priced at a super-premium in comparison to other places of lodging and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint.

90. Defendant's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff's rights and interests. Defendant's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

**COUNT VI**
**Negligent Misrepresentation**
**Including Brand Deceit**
**Against BW  and Red Roof**

91. Plaintiff realleges all allegations heretofore set forth.

92. Defendant had a duty to disclose to Plaintiff correct information relating to its accessibility because (1) Defendant was in a superior position than Plaintiff such that reliance by Plaintiff was justified and (2) the Requirement of 28CFR§36.302(e). Defendant possessed the skills and expertise to know the type of information that would influence a disabled traveler's booking decision.

93. Defendant negligently or carelessly misrepresented, omitted, and concealed from disabled travelers material facts regarding the quality and characteristics of Hotel's accessibility.

94. Defendant made such false and misleading statements and omissions through a wide range of advertisement medium described herein and in Addendum A, with the intent to induce Plaintiff to lodge at the Hotel.

95. Defendant was careless in ascertaining the truth of its representations in that it should knew or should have known that Plaintiff would not realize the extent of accessibility barriers at the Hotel.

96. Plaintiff was unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to lodge at the Hotel.

97. Plaintiff would not have lodged at the Hotel if the true facts had been known.

<u>**COUNT VII**</u>
**Violations of California's False Advertising Law**
**Including Brand Deceit**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**
**Against BW  and Red Roof**

98. Plaintiff realleges all allegations heretofore set forth.

99. California's FAL (Bus. & Prof. Code §§17500, et seq.) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

100.    Throughout the relevant period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of its rooms to the disabled, as described above.

101.    Defendant knew or should have known through the exercise of reasonable care that their statements were untrue and misleading.

102.    Defendant's actions in violation of the FAL were false and misleading such that the disabled individuals are and were likely to be deceived.

103.    As a direct and proximate result of these acts, Plaintiff has been and is being harmed.

104.    Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers.

### COUNT VIII
### Violations Of California's Unfair Competition Law
### Including Brand Deceit
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
### Against BW  and Red Roof

105.    Plaintiff realleges all allegations heretofore set forth.

106.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include ***unlawful***, ***unfair <u>or</u> fraudulent*** business practices and unfair deceptive, untrue or misleading advertising ...." The UCL also provides for injunctive relief and restitution for UCL violations.

### ***Unlawful***

107.     "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

108.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

109.    Defendant violated the "unlawful prong" by violating the ADA, Unruh, DPA state laws relating to misrepresentation and concealment all as alleged above.

110.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff has suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unlawful prong" violations.

111.    Pursuant to Bus. & Prof. Code §17203, Plaintiff is therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's

attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### ***Fraudulent***

112.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

113.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL because Defendant made false representations as alleged above.

114.    Plaintiff acted reasonably when they purchased Defendant's lodging services based on their belief that Defendant's representations were true.

115.    Defendant knew or should have known, through the exercise of reasonable care, that their representations about its accessible lodging were untrue and misleading.

116.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff has suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation.

### ***Unfair***

117.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

118.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff arising from Defendant's conduct outweighs the utility, if any, of those practices.

119.    Defendant's practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for an ordinary lodging room.

120.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff has suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation.

121.    Pursuant to Bus. & Prof. Code §17203, Plaintiff is therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT IX
### Negligence
### Against BW Only

122.    Plaintiff realleges all allegations heretofore set forth.

123.    Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

124.    Defendant breached this duty.

125.    Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[22].

126.    Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

127.    Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[23].

128.    Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

129.    Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards

---

[22] 42 U.S.C. § 12101(a)(2)
[23] 42 U.S.C. §12101(a)(3)

and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[24].

130.    Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

131.    Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[25].

132.    Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

133.    The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[26].

134.    Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

135.    Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[27].

136.    Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

137.    Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

---

[24] 42 U.S.C. §12101(a)(5)
[25] 42 U.S.C. §12101(a)(6)
[26] 42 U.S.C. §12101(a)(7)
[27] 42 U.S.C. §12101(a)(8)

138.    By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

139.    The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

140.    Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

141.    Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**COUNT X**
**Civil Conspiracy**
**Against BW and Red Roof**

142.    Plaintiff realleges all allegations heretofore set forth.

143.    As indicated above, BW and Red Roof agreed to hide the true ownership, management, control and origin of BW through the use of the name Red Roof Plus+.

144.    Plaintiff suffered an injury resulting from Defendants' brand deceit and their agreement to accomplish it in a manner described above and was damaged thereby in an amount of no less than $35,000.00.

145.    Defendants either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

146.    Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts but in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

A. For finding of that Defendants committed a civil conspiracy; and

B.  For damage as prayed for above; and

C.  For damages in the amount requested; and

D.  For punitive damages in the amount requested; and

E.  For an order requiring that Defendants engage in a corrective informational campaign to all its former, current and potential guests advising of true facts relating to Hotel owners, operators and managers; and

F.  For such other and further relief as the Court may deem just and proper.

**COUNT XI**
**Civil Aiding and Abetting**
**Against Red Roof Only**

147.  Plaintiff realleges all allegations heretofore made.

148.  Defendant Red Roof aided and abetted Defendant's BW brand deceit by:

A.  Providing the Red Roof Plus signage on the physical Hotel building; and

B.  Maintaining a booking website that does not disclose the true ownership and operator of the Hotel; and

C.  Issuing reservation confirmations in the name of Red Roof in order to conceal the true ownership and operations; and

D.   Otherwise assuring that the true name of the owner of the Hotel appears nowhere on its disclosures, websites, booking websites, telephonic identification, physical signage or anywhere else; and

E.  Providing a website platform upon which Defendant BW advertised its rooms with false and misleading accessibility disclosures.

149.  Plaintiff suffered an injury resulting from Red Roof's aiding and abetting brand deceit in an amount of no less than $35,000.00.

150.  Defendants either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

151.  Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts but in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

A.  For finding of that Defendant Red Roof committed civil aiding and abetting; and

B.  For damage as prayed for above; and

C.  For punitive damages in the amount requested; and

D.  For an order requiring that Defendants engage in a corrective informational campaign to all its former, current and potential guests advising of true facts relating to Hotel owners, operators and managers; and

E.  For such other and further relief as the Court may deem just and proper

### PUNITIVE DAMAGES ENHANCEMENT ALLEGATIONS

152.  Plaintiff further alleges that:

a.  Defendants' conduct was and continues to be reprehensible; and

b.  Defendant's caused severe of the harm, i.e. segregation of persons with disabilities; and

c.  Defendants BW and Red Roof conspired to mislead the Plaintiff and the public regarding Hotel's ownership, control and origin; and

d.  Defendants segregated of Plaintiff from the rest of the traveling public; and

e.   The duration of Defendants' the misconduct is over 30 years; and

f.  Defendants' were fully aware of their own illicit maintenance of the Hotel; and

g.  Particularly where compensatory damages may be low, "the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages". *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (citing to 1 Dan B. Dobbs, *Law of Remedies* § 3.11(10), at 515-16 (2d ed. 1993))).

153.  These factors recommend that only the most severe sanctions against Defendants.

### REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 7th day of September, 2020.

**PETER STROJNIK**

_____

Plaintiff