Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER STROJNIK,<br><br>Plaintiff,<br><br>vs.<br><br>BW RRI II, LLC. DBA RED ROOF PLUS+ SAN FRANCISCO AIRPORT<br><br>Defendant. | Case No: 3:20-cv-03142-AGT<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS [21]** |

In this Court's Order Granting Motion to Dismiss dated September 1, 2020, Dkt. at 16, Strojnik was granted leave to amend with the following instruction:

> Because Strojnik hasn't explained how he was harmed by the hotel's accessibility barriers, he hasn't sufficiently alleged an injury-in-fact. And on this ground, dismissal of his ADA claim is warranted. *See Chapman*, 631 F.3d at 954 (instructing the district court, upon remand, to dismiss the plaintiff's ADA claim for lack of standing because the plaintiff "[did] not even attempt to relate the alleged violations to his disability"). Strojnik may be able to cure this pleading defect, so he has leave to amend his complaint.
>
> \*\*\*
>
> If Strojnik chooses to amend his complaint… he must also submit evidence supporting his intent to visit the Burlingame Red Roof Plus after the hotel's accessibility barriers are removed. His submission should include evidence of prior visits to the Burlingame area, reasons for visiting the area, concrete plans for future visits to the area, and evidence of prior stays at Red Roof branded hotels. This evidence is necessary to determine if there is subject-matter jurisdiction in the case.

On November 7, 2020, Strojnik timely filed his Amended Complaint at Dkt. 18, in which he claims entitlement to equitable nominal damages. *Id.* at ¶¶ 15, 60. The existence of equitable nominal damages in ADA litigation grants District Court continuing jurisdiction. *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017).

Further, Strojnik enhanced factual allegations as required:

14. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

15. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages.

***

17. The ADA violations documented below relate constitute barriers to Plaintiff equal enjoyment of defendant's Hotel by virtue of the limitations of major life activities described in Table 1 below, that is, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows, and working in a manner understood by the application of common sense…

18. These barriers impair Plaintiff's full and equal access to the Hotel.

19. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA compliant as such compliance relates to Plaintiff's disability. However, Plaintiff intends to return to the Hotels periodically to test them for ADA compliance. Plaintiff's current intent is to return to the Hotels to lodge there or to test their accessibility within a year's time.

20. Plaintiff intends to visit the Hotels at a specific time when they become fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant Hotel suffers an imminent injury from the Hotel's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

21. Plaintiff's intent to return is evidenced by the following factors:

   a. Plaintiff is 68 years old and has a comfortable car that can easily travel from Phoenix to San Francisco and on to Napa; and

b. Plaintiff has been traveling to San Francisco either as a final journey or an interim destination on the way to Napa regularly since 1980, both in business and for pleasure; and

c. During the past several years, Plaintiff has averaged two yearly trips to Napa / San Francisco± and has lodged there; and

d. Plaintiff regularly travels to Napa to stock up on wines and spirits; and

e. Plaintiff has a specific motive and intent to return to the location of the Hotel for three specific purposes: First, to lodge there and, Second, while lodging there, conduct further review of the Hotel and, Third, to retest the hotel for ADA compliance; and

f. Plaintiff will stay at BW when he is assured that it is ADA compliant.

22. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

23. The ADAAG and Unruh violations in this Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

24. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

25. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

26. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

27. Plaintiff's physical infirmities alleged above do both of the following:

a. Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems; and

b. Limit, without regard to mitigated or unmitigated measures, active or inactive state, remissive or non-remissive condition, the following major life activities: walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities.

28. Plaintiff has a history of impairments stated in the preceding paragraph.

29. Plaintiff is regarded as having a physical conditions that limit major life activities.

***

32. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | x | x | x | Abnormal cell growth, genitourinary, bladder, reproductive functions. | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Renal Cancer | x | x | x | Abnormal cell growth, midsection twisting, turning, general movement. | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) |

| | | | | | |
|---|---|---|---|---|---|
| Femoral Neuropathy | | | | body, running, climbing, carrying stuff and other major life activities | (d)(2)(iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Partially Missing Limb - Missing Right Knee | x | x | x | Walking, standing, sitting, bending, walking, sleeping, working, climbing stairs, kicking, jumping, running, twisting knee, carrying stuff, and other major life activities. | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, carrying stuff and working. | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(e)(1)(2)<br>(f)(1) |
| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working, carrying stuff, or physically functioning on any level. | (c)(1)(i)<br>(d)(1)(iv)<br>(d))1)(v)<br>(d))1)(vi)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |

**Table 1**

\*\*\*

36. With respect to the disclosures required by 28 C.F.R. 36.302(e)(1)(ii) and with respect to the removal of actual, physical or architectural barriers to accessibility, Plaintiff alleges:

   A. Plaintiff is ADA disabled as described above. The relationship between Plaintiff's impairments and major life activities is described in Table 1.

   B. Plaintiff's impairments are substantially limiting as this term is defined in the 2008 ADA Amendment Act and interpreted in 28 C.F.R. 36.105.

5

C. Plaintiff alleges that the provisions of the 2008 ADA Amendment Act and 28 C.F.R. 35.105 relating to (1) ameliorative effects of mitigating measures (2) episodic impairments, (3) remissive impairments, (4) predictable assessments and (5) the interpretative definition of "substantially limiting" apply to Plaintiff.

D. Because of and based on Plaintiff's impairments described above, Plaintiff requires a place of lodging where he desires to book a room to both:

  (i) Identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff assess independently whether Defendant's Hotel and guest rooms meet Plaintiff's accessibility needs; and

  (ii) Remediate architectural accessibility barriers that relate to Plaintiff's impairments.

E. The identification of accessible features at the hotel through a hotel's reservation service is required because without such information, Plaintiff is unable to assess independently whether a hotel's condition meets Plaintiff's needs.

F. The remediation of architectural accessibility barriers as they relate to Plaintiff's impairments is required because any encounter with architecturally inaccessible elements causes Plaintiff discomfort and pain when using, negotiating, overcoming or otherwise encountering such barriers.

G. As a result, Plaintiff requires a hotel's booking services to disclose, and the hotel to remediate, all of the following accessibility requirements of the applicable Standards for Accessibility Design[1]:

  (i) Operable parts [205[2], 309, 404,] such as doors, door opening and closing hardware, AC controls. An encounter with a non-compliant operable part causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

---

[1] These requirements are based on Plaintiff's disability as defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105 in their active, inactive, remissive, non-remissive, mitigated or unmitigated states.

[2] Bracketed numbers refer to Standards for Accessibility Design.

6

(ii) Knee and toe clearances [306] at counters, bars etc. An encounter with a non-compliant knee and toe clearance causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.
(iii) Reach ranges [308] in sales stores and other elements. An encounter with a non-compliant reach range causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.
(iv) Accessible routes [402]. An encounter with a non-compliant accessible route causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.
(v) Walking surfaces [403] on accessible routes. An encounter with a non-compliant walking surfaces causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.
(vi) Parking spaces, passenger loading ones, stairways and handrails [501, 502, 503, 504, 505]. An encounter with a non-compliant parking facilities, stairways and handrails causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.
(vii) Toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms [602, 603, 604, 606, 607, 608, 609, 610, 611 and 612]. An encounter with a non-compliant toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.
(viii) Transient lodging guest rooms [806]. An encounter with a non-compliant transient lodging guest room causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.
(ix) Dining surfaces and work surfaces, benches, check out isles and sales and service counters [902, 903, 904]. An encounter with a non-compliant dining surfaces and work surfaces, benches, check out isles and sales and service counters cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.
(x) Swimming pools and saunas [1009]. An encounter with non-compliant swimming pools or saunas causes Plaintiff to experience pain and

discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

37. Plaintiff reviewed Defendant's booking website to determine whether it "identif[ies] and describe[s] accessible features and guest rooms offered through its reservations service in sufficient detail to assess independently whether [Defendant's Hotel or guest room] meet [Plaintiff's] accessibility needs".

38. The reproduction of relevant booking websites in Table 2 below demonstrates a failure to identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff to assess independently whether Defendant's Hotel or guest room meet Plaintiff's accessibility needs:

| 28 C.F.R. 36.302(e)(10)(ii) NON-COMPLIANCE https://www.redroof.com/property/ca/burlingame/RRI228 |
|---|
| **Convenience**<br>• 100% Smoke-Free<br>• ADA Accessible Parking<br>• ADA Accessible Rooms<br>• Coin Laundry<br>• Communication Assistance Available: TTY & Bed Shaker<br>• Exterior Corridors<br>• Mobility Accessible<br>• Portable Crib/Play Yard Available<br>• Public Transportation Nearby<br>• Restaurant within 1 Mile<br>• Sleep, Park & Fly<br>• Snack Center |
| **Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| **The manner in which the barriers denied Declarant full and equal use or access, and which deter Declarant from visiting the Hotel:** Barrier denied Declarant full and equal access by failing to identify and describe accessible |

8

| |
|---|
| features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| **Table 2** |

39. The information disclosed on Hotel's Booking Website include the following misrepresentations of fact:

    A. That the Hotel has accessible self-parking. This representation is false as evidenced in Table 3 below.

    B. That the Hotel is mobility accessible. This representation is false as evidenced in Table 3 below.

40. Plaintiff personally visited the Hotel and personally encountered the following photographically documented conditions at the Hotel. Below each photograph is a vernacular description of the barrier and how the barrier affected Plaintiff's impairments described above so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).

| **PERSONAL BARRIER ECOUNTERS** |
|---|
| The Personal Encounters photographically described below, and the description how this violation deters strojnik from returning to the Hotel, are based on the following statutory and regulatory definitions: |
| **Relevant ADA disabilities**: <ul><li>prostate cancer[3] and genitourinary impairment[4];</li><li>renal cancer[5];</li><li>severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy[6];</li><li>degenerative right knee (missing part of limb replaced with prosthesis)[7].</li><li>Impairment of upper extremities diagnosed as possible carpal tunnel syndrome and degenerative disease of the cervical spine and shoulders.</li><li>Pleurisy.</li></ul> |
| **Disability** means, with respect to an individual" |

---

[3] Cancer is a disability impairment. 28 CFR 36.105(b)(2)
[4] 28 CFR 36.105(b)(1)(i)
[5] *Id.*
[6] Constitutes ADA disability. *Barlow v. Walgreen* (M.D. Fla. 8:11-cv-71-T-30EA, 2012)
[7] 28 CFR 36.105(d)(2)(iii)(D)

9

(i) A physical impairment that substantially limits one or more of the major life activities[8], or
(ii) a record of such an impairment[9]; or
(iii) Being regarded as having such an impairment[10].

**An impairment is a disability** within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population[11].

**Physical Impairments** include any *physiological condition* or *anatomical loss* affecting one or more body systems, such as: *Neurological, musculoskeletal,* digestive, genitourinary. *Orthopedic* and *cancer* conditions are specifically defined as Physical Impairments[12].

**To be Substantially Limiting**, an impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity. The term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for substantially limits applied prior to the ADA Amendments Act[13].

**Episodic or Remissive** impairment is a disability if it would substantially limit a major life activity when active[14].

**Ameliorative Effects of Mitigating Measures** - such as medication, equipment, prosthetics - cannot be considered in determining whether an impairment substantially limits a major life activity; the effect of impairment must be considered in its unmitigated state[15].

**Predictable Assessments** require a finding of disability in any of the following circumstances:
- Partially missing limbs[16];
- Cancer[17]
- Major depressive disorder, bipolar disorder, post-traumatic stress disorder[18].

---

[8] 28 CFR 36.105(a)(1)(i)
[9] 28 CFR 36.105(a)(1)(ii)
[10] 28 CFR 36.105(a)(1)(iii)
[11] 28 CFR 36.105(d)(v)
[12] 28 CFR 36.105(b)(1)(i)
[13] 28 CFR 36.105(d)(1)(v)
[14] 28 CFR 36.105(d)((1)(iv)
[15] 28 CFR 36.105(d)(1)(viii)
[16] 28 CFR 36.105(d)(2)(iii)(D)
[17] 28 CFR 36.105(b)(ii)(2) and 28 CFR 36.105(d)(2)(iii)(F)
[18] 28 CFR 36.105(d)(2)(iii)(K)

**Major Life Activity** includes:
    (i)    [P]erforming manual tasks, … sleeping, walking, standing, sitting, reaching, lifting, bending, …concentrating, thinking, writing, communicating, interacting with others, working[19]; and
    (ii)    The operation of a *major bodily function,* such as …normal cell growth, and digestive, genitourinary, …bladder, neurological, musculoskeletal, and reproductive systems. The operation of a major bodily function includes the operation of an individual organ within a body system[20].

**CONCLUSION:** Declarant's impairments constituting disability under the ADAAA and 28 C.F.R. 36.105 must be considered (1) in their unmitigated state and, if episodic, (2) as if they were active. Further, Declarant claims under all 3 prongs, including the "regarded as" prong of disability.



**Description of Barrier:** No marked passenger loading zone.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide an exclusive, marked passenger loading zone. Therefore, upon return to the Hotel, Plaintiff would

---

[19] 28 CFR 36.105(c)(1)(i)
[20] 28 CFR 36.105(c)(1)(ii)

run the risk of having the passenger loading zone occupied by a non-disabled individual with the result that Strojnik would have to (1) walk further to the vehicle and (2) carry his luggage at a greater distance. This, in turn, would cause him pain, suffering and discomfort which is prohibited by the ADA.



**Description of Barrier:** "Accessible" parking not closest to entry.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide an exclusive, marked accessible parking closest to the lobby. Therefore, upon return to the Hotel, Plaintiff would have to walk further from accessible parking than other non-disanled persons with the result that Strojnik would have to (1) walk further to the vehicle and (2) carry his luggage at a greater distance. This, in turn, would cause him pain, suffering and discomfort which is prohibited by the ADA.



**Description of Barrier:** "Accessible" parking slope is too steep (over 1:48).

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide a level accessible parking space. Therefore, upon return to the Hotel, Plaintiff would have to struggle while entering or exiting the vehicle, grabbing onto the door frame and pulling himsel out of the vehicle while at all times holdin on to the frame with the attendant danger of falling along the slope line as evidenced by a parallellogram of forces.



**Description of Barrier:** Improperly configured handrail is neither oval nor curcular.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, the Hotel does not provide handrails that are usable by Plaintiff based on his impairments.

**Description of Barrier:** Laundry controls are out of reach range.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint, and irrespective of amelirative effect of mitigaing damages as demanded by the 2008 ADAAA and 28 C.F.R. 36.105, Plaintiff cannot reach the laundry controls because they are out of reach range.



**Description of Barrier:** Soap vending is out of reach range.

**How this violation deters Plaintiff from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of this Complaint, and irrespective of amelirative effect of mitigaing damages as demanded by the 2008 ADAAA and 28 C.F.R. 36.105, Plaintiff cannot reach the soap vending controls because they are out of reach range.



**Identification of Specific Barrier in Plain Language:** Inaccessible check-in in counter.

**How this violation deters Strojnik from returning to the Hotel:** Based on his impairments and the effect thereof on major life activities described in the body of Complaint, the ADA violation depicted in this photograph deters Plaintiff from visiting the Hotel because, in violation of the ADAAG, it does not provide accessible check in desk. Plaintiff is deterred from visiting the hotel because of his potential use of wheelchair as defined in 28 C.F.R. 36.104 prevent him from accessing the check in counter.

**Table 3.**

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff claims entitlement to equitable nominal damages. Dkt. 18 at ¶¶ 15, 60. The existence of equitable nominal damages in ADA litigation grants District Court continuing jurisdiction. *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017). Further,

Amended Complaint satisfied this Court's concerns expressed in Dkt. 16. Defendant's Motion to Dismiss must be denied.

RESPECTFULLY SUBMITTED this 7th day of October, 2020.

**PETER STROJNIK**

_____
Plaintiff

ECF filed October 7, 2020.